*862 The opinion of the court was delivered by
Marring, C. J.
The relator was re-elected Judge of the seventh district court of Orleans parish in November 1872, and was commissioned, and qualified thereunder.
On December 11th. of that year, an act was passed by the legislative abolishing the seventh and eighth district courts of that parish, and providing for the transfer of the records of those courts to other courts named therein, and also creating a new court to be called the Superior district court. Acts 1873, p. 38.
Judge Collens continued to perform the duties of his office until the records of his court were taken away, the clerk was dispossessed of his place, and the court room was occupied by the Fourth court, to which it had been assigned. After that, he held himself in readiness to perform Its duties, and refrained from resuming the practice of his profession for two years or more.
In April 1873, the relator applied for and obtained a mandamus to •compel the Auditor to warrant on the State Treasury for the two quarters of his salary ending respectively Dec. 31,1872 and March 31, 1873. 'The first of these quarters commenced Oct. 1,1872, at which time Judge Collens was serving under his election and commission of 1868. That case was carried to the Supreme Court; and our immediate predecessors held that he was entitled to his salary up to the promulgation of the Act -of December 1872, which abolished his court, and was not entitled to any salary thereafter. Collens v. Clinton, 26 Annual, 406.
The present suit does not embrace a claim for salary for the period included in that suit, but seeks to enforce the right to salary from April 1,1873, to NovemberT876, the end of the term for which the relator was elected and com missioned.
The respondent pleads the exception of res adjudícala, basiDg the plea upon the prior suit, and in case it should be overruled answers by a general denial, and with the special averment that there is no appropriation for the payment of the relator’s salary. There was judgment for the relator, and the respondent appeals.
As to this last objection the respondent is in error, since it appears that the general appropriation bills for 1873 and 1874, each contain an appropriation of one hundred and twenty-five thousand dollars for the salary of the District judges throughout the State, and refer specifically to the Act of 1868 as the one copied or renewed, at which time the Seventh court was one of those provided for, and besides contain an appropriation of five thousand dollars for the salary of the judge of the Superior district court. The general appropriation bills for 1875 and 1876 provide one hundred and thirty thousand dollars in lump for the same purpose. So far as these bills may be considered as á legislative inter *863 pretation of the Act of Dee. 1872, they are an indication that the General Assembly treated the salary as being due the relator.
There are two questions in this case,
1. can the relator sue to recover his salary in this form of actioD,
'2. is his former suit a bar to the present.
The State is a sovereign, and can not be sued by her citizens, in her own courts, without her permission, but a civil proceeding, by which one •officer of the State seeks to compel another officer of the same State to perform a ministerial duty, is not, in the proper sense of the words, a suit against the State. Nothing is more common than for a party who has a claim against the State, whether for salary as an officer, or for money due on other accounts, to have his right to payment adjudicated through and by means of a mandamus against the auditing officer. Tt is recognized by us continually as a legitimate mode of ascertaining what are the rights of persons who have, or who prefer, claims against the State. And to say, that none but an officer of the State can lawfully claim a salary from her, and that the relator can not claim it because his office is abolished,would be to assume in the outset as established, the very thing which is the gist of the controversy.
The plea of res acljudicata is not tenable. To sustain that plea, there must be an identity of parties, of capacity, of object, and of cause of action. One of those at least is lacking here. Marcade says ; — La «cause, qui doit étre la méme dans les deux demandes que pour la seconde soit ócartie eomme deja jugée, e’est le principe qui engendre immédiatement le droit q’une partie pretend exercer et que l’autre lui conteste * * * du reste, Vobjet se tro uve par la réponse a cette question ; que demande le plaideur? et on tro uve la cause par la reponse a cette autre question; sur quoi le plaideur fond-t-il immódiatement sa pretention ? Explication du Code Napoleon, tome 5. p. 172,
. The relator has carefully excluded from his present demand the salary for the two quarters, which formed the object of the demand in the first suit, and upon which there was an adjudication. It seems more probable that, on the part of the respondent, a plea has been confounded with a principle, and that in pleading the judgment in the previous case :as an estoppel, hé meant rather that the principle or ruling made by this •court, as then constituted, was conclusive of the right of the relator, or his want of right, on the principle of stare decisis.
That principle is so deeply imbedded in jurisprudence that it is considered one of its fundamental rules, and is not to be departed from, •except in those instances when a rigid adherence to it would be more detrimental than a disregard of it. A graver and more important principle lies behind that rule in this case. An unreasoning observance of it here would establish the doctrine that legislatures could control the *864 operation of the organic law when it prescribes the constitution of the judicial department of the government, and abolish constitutional offices at their own will. It is marvellous that the danger and the error of so radical a change in that system of checks and balances, which has so-long been justly deemed the supreme excellence of our republican government, was not perceived.
The constitution fias provided that in the parish of Orleans, the General Assembly may establish as many district courts as the public interests may require, and until otherwise provided there shall be seven— that the term of office of a district judge shall be four years, and his salary shall not be increased nor diminished during his term of office— that he, like all other officers, shall continue to discharge t|ae duties of his office until his successor shall have been inducted, except only in cases of impeachment or suspension — and.that he is liable to both of these for crimes and misdemeanors, and is also subject to removal for reasonable cause upon the address of two thirds of the elected members of the General Assembly.
When a judge has acquired his office in the mode designated by the constitution, he has a vested right to its emoluments during the term fixed by the constitution for its duration. The legislature can not deprive him of it. He may be impeded in the exercise of his judicial functions. He may be shorn of judicial power, and be deprived of the opportunity to discharge the duties imposed upon him by the acceptance of his office, but he cau not be divested of the office except by one of the modes appointed by the constitution for that purpose, and he can not be denied his just demand of payment of the salary, which is prohibited from being increased or diminished during his term.
All devices tending to abrasion of the independence of the judiciary, or to subject it to legislative or popular caprice, have been uniformly condemned by the wisest men of our country. Numerous instances have occurred in the States of attempts by the legislatures to oust judges from their constitutional offices, and deprive them of their salaries, and in no instance has the doctrine announced in the relator’s case in the twenty-sixth Annual found any favour. A case in Illinois meets the point exactly. Ballou was elected a judge of the circuit court, was commissioned and qualified, and two years afterwards and before the expiration of his term, the legislature repealed the act which created the circuit of which he was judge, and established another circuit in its stead. The court say; — “ The question is, can the legislature expel a circuit judge from his office by creating anew circuit, and taking from him. the territory which constituted his circuit. The bare reading of the constitution must convince any one that it intended to prohibit such a proceeding. It was the intention of that instrument to place the *865 judges entirely above and beyond legislative control or interference, except by impeachment or address.- It is the constitution which creates the office of circuit judge, and not the legislature. * * * * It is unnecessary now to say whether the legislature may reduce the number of judicial districts by abolishing one and attaching its territory to another. If it may, then the office would cease upon the expiration of the term of the judge, but until the expiration of his term, the constitution has not provided, nor has it authorized any mode of expelling him from his office.” 23 111. 550.
The independence of the judicial department of the government is at once the anchor of our stability, the prop of our strength, and the shield of our defence.. Its necessity was early felt — its importance instantly recognized. Said Mr. Hamilton ; — “ This independence of tho judges is equally requisite to guard the Constitution and the rights of individuals, from the effects of those ill humours which the arts of designing men, or the influence of particular conjunctures, sometimes disseminate among the people themselves, and which, though they speedily give place to better information, and more deliberate reflection, have a tendency, in the mean time, to occasion dangerous innovations in the government, and serious oppressions of the minor party in the community. * * * * It is not to be inferred from the principle (that constitutions may be altered or abolished) that the representatives of the people, whenever a momentary inclination happens to lay hold of a majority of their constituents incompatible with the provisions in the existing constitution, would, on that account, be justifiable in a violation of those provisions ; or that the courts would be under a greater obligation to connive at infractions in this shape, than when they had proceeded wholly from the cabals of the representative body.” No. 78 of the Federalist.
The relator is entitled. to his salary for the term of his office, not included in his former suit, and the respondent should have audited his claim therefor to the extent of the appropriations, and drawn the warrants upon the Treasury in accordance therewith. We can not however make the mandamus peremptory so as to compel the Auditor to warrant for any sum beyond the appropriations for these officers. The extracts from the Auditor’s books shew that there is a balance of the appropriation for each year unexpended, and that this balance is a different sum in each year, amounting to over thirteen thousand dollars in 1873, but to smaller sums in each of the subsequent years. Therefore
It is ordered, adjudged, and decreed that the judgment of the lower court is amended by making the mandamus peremptory so far as to direct the Auditor to warrant on the Treasury in favor of the Relator to the extent only of one half of the unexpended balance for each year on *866 his books to the credit of the District Judges Fund, unless said balance exceeds the amount of the warrants to which he is entitled, in which case the Auditor shall warrant for only such sum as the salary of the Relator amounts to, and as amended, that it be affirmed, the relator to pay costs of appeal.